**FILED**

UNITED STATES DISTRICT COURT
SANTA FE, NEW MEXICO

**JAN 2 6 2024**

**MITCHELL R. ELFERS
CLERK**

JAVIER BALDERAMA
2769 Walnut St
Santa Fe N M 87507
(505) 316-2968

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

JAVIER BALDERAMA, Plaintiff

v.

Shannon Bulman in her official
capacity as Judge for the First District
Court of New Mexico

and

Betina McCracken in her official
Capacity as director of the New
Mexico Child Support Division

Defendants

CV 24-84

REQUEST FOR DECLARATORY
RELIEF PURSUANT TO 28 U.S.C.
§ 2201(a) AND INJUNCTIVE
RELIEF PER EX PARTE YOUNG,
209 U.S. 123 (1908)

1

{1}    **COMPLAINT**

{2}    **Preliminary Statement**

{3}    Plaintiff (Father) is an undocumented noncitizen residing in Santa Fe, New Mexico who is party to a domestic case dating back to 2012. See Langarcia v. Balderama, No. D-101-DM-2012-00080. Plaintiff is subject to the provisions of the Immigration Reform and Control Act (IRCA).

{4}    Plaintiff currently is subject to a child support order issued by Judge Bulman that requires him to find employment.

{5}    Plaintiff intends to request a new child support order explicitly making the argument that Judge Bulman's order is incompatible with the purpose of the Immigration Reform and Control Act (IRCA). While Plaintiff is confident of his position, particularly given proceedings in U.S. v. Texas (case 1:24-cv-00008 in the U.S. District Court for the Western Division of Texas Austin Division), Plaintiff needs to know whether the 10th Circuit will create circuit splits on the issues of applicability of Younger abstention in family court cases and said IRCA issue, as discussed further below. Plaintiff also needs to know if the 10th Circuit will approve of state court judges violating speech rights, also discussed below.

{6}    The IRCA is described by the Supreme court: "The federal Immigration Reform and Control Act is a comprehensive framework for

2

"combating the employment of illegal aliens" that "makes it illegal for employers to knowingly hire, recruit, refer, or continue to employ unauthorized workers. See 8 U.S.C. 1324a(a)(1)(A), (a)(2). *Arizona, et al., Petitioners v. United States, 132 S. Ct. 2492 (2012) 567 U.S. 387,* hereinafter *Arizona).*

{7}     Federal law includes penalties for undocumented aliens who take employment: "With certain exceptions, aliens who accept unlawful employment are not eligible to have their status adjusted to that of a lawful permanent resident. Aliens may also be removed from the country for having engaged in unauthorized work" *Arizona*, page 7 (internal citations omitted).

**{8}**     State laws are preempted when they are an obstacle to the objectives of federal law: "state laws are preempted when they conflict with federal law. This includes cases where "compliance with both federal and state regulations is a physical impossibility," and those instances where the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,"." *Arizona* pages 4 &5 (internal citations omitted).

**{9}**     "The Government of the United States has broad, undoubted power over the subject of immigration and the status of noncitizens" *Arizona*. In

fact, "the regulation of [noncitizens] is so intimately blended and intertwined with responsibilities of the national government that where it acts, and the [S]tate also acts on the same subject," the state law must give way. Hines v. Davidowitz, 312 U.S. 52,66 (1941).

{10}      Therefore, any court order requiring an undocumented noncitizen to find employment is a violation of the Supremacy Clause *See U.S. Const. art. VI cl. 2.*

{11}      This Complaint addresses a subset of the issues in the previous case 1:21-cv-01037 from the Federal District Court for the District of New Mexico. Since this District Court dismissed the case without prejudice, and since the rulings did not specifically say that the issues could not be further litigated, claim preclusion is not applicable [Rule 41(b) of the Federal Rules of Civil Procedure].

{12}      Said previous case was dismissed because the Federal Court claimed that Younger abstention *Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69 (2013)* (hereinafter *Sprint*) was required due to enforcement proceedings pending at the time of filing [see page 16 of Document 39 of case 1:21-cv-01037 files 03/31/23: "Magistrate Judge Robbenhaar concludes that the Court is without jurisdiction to review Balderama's request for declaratory and injunctive relief pursuant to the Younger abstention doctrine… the child

support proceedings from which Balderama seeks relief were ongoing at the time he filed his federal action, that they involve civil enforcement proceedings, and that they involve a civil action implicating important state interests."].

{13}    When the case was appealed to the 10ᵗʰ Circuit Court, the 10ᵗʰ Circuit declined to consider the merits of Younger abstention, but affirmed the District Court's decision to dismiss without prejudice. The 10ᵗʰ Circuit Court affirmed claiming that Plaintiff had not overcome the argument of judicial immunity, even against Judge Bulman, despite the fact that judges are not immune from declaratory relief: "Judicial immunity generally does not bar declaratory relief. Schepp v. Fremont, 900 F. 2d. 1448, 1452, (10th Cir. 1990)."

{14}    This is an appropriate time for this Court to consider Plaintiff's Complaint because all state enforcement proceedings have ended and the time to appeal has run (See page 22 of Document 39 filed on 3/31/23 in case 1:21-cv-01037-JB-JBR): "According to the Tenth Circuit, a State proceeding ends when the time for appeal has run. See *Hunter, 660 F. App'x at 715* (citing Bear v. Patton, 451 F.3d 639 (10ᵗʰ Cir. 2006) ([I]f a lower state court issues a judgement and the losing party allows the time for the appeal to expire, then the state proceedings have ended."))".

{15}      Since there are no current enforcement proceedings against Plaintiff,

Younger abstention is clearly erroneous. The 10th Circuit states in

*Courthouse News Serv. V. N.M. Admin. Off. Of Cts., 53 F.4th 1245, 1254*

*(10th Cir. 2022)* "Here, we conclude that the district court did not err in

declining to abstain under the Younger doctrine. The Supreme Court has

held that "[a]bsent any pending proceeding in state tribunals,

... Younger abstention [is] clearly erroneous." *Ankenbrandt v. Richards, 504*

*U.S. 689,705,112 S.Ct. 2206, 119 L.Ed.ed 468 (1992).*

{16}      Rooker-Feldman abstention is not an issue in this case *Rooker v.*

*Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)*, and

*District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct.*

*1303, 75 L.Ed.2d 206 (1983)*. The Rooker-Feldman doctrine prevents federal

district courts from assuming jurisdiction over "cases brought by state-court

losers complaining of injuries caused by state-court judgments rendered

before the district court proceedings commenced and inviting district court

review and rejection of those judgments *Exxon Mobil Corp. v. Saudi Basic*

*Indus. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517 (2005); *Guttman v. Khalsa,*

446 F .3d 1027, 1032 (10th Cir. 2006)". Plaintiff is requesting relief for

future judgements, not past judgement, so Rooker-Feldman does not apply.

Furthermore, since the New Mexico Supreme Court has chosen to deny

certiorari, Plaintiff is not a state court loser by the Rooker-Feldman criteria,
so Rooker-Feldman abstention is not appropriate.  As described in Section II
of *Guttman* (*supra*), a person is a state court loser only: (1) "when the
highest state court in which review is available has affirmed the judgement
below and nothing is left to be resolved"; (2) "if the state action has reached
a point where neither party seeks further action"; or (3) "if the state court
proceedings have finally resolved all the federal questions in the
litigation...".  To this date, the New Mexico Supreme Court has not affirmed
the judgement of the New Mexico Court of Appeals ruling – it has denied
certiorari instead of deciding the case on its merits. Declining to hear a case
is not the same as affirming. "See *Pittsburg County Rural Water Dist. No. 7
v. City of McAlester*, 358 F.3d 694, 707 (10th Cir. 2004) (concluding that
Rooker-Feldman does not bar a federal suit where a state court did not
decide the federal claim on the merits)" as cited in Section II of *Guttman v.
Khalsa*, 401 F.3d 1170 (10th Cir. 2005) (overruled for not denying the
application of Rooker-Feldman).

{17}     Plaintiff requests that the court acknowledge that the point at which a
state has decided an issue (which is important for determining if Rooker-
Feldman abstention applicable) is different from the point at which state
proceedings have ended (which is important for deciding if Younger

abstention is applicable). For example, if the time to appeal is has expired,
the proceedings have certainly ended (see paragraph 14). If the time to
appeal has expired and the State's highest court has not ruled on the merits,
then the state proceedings are over but the state has not issued a final
decision for the sake of Rooker-Feldman (see paragraph 16).

{18}     This is also a suit against Betina McCracken of the CSED for
prospective injunctive relief from prosecution by the Child Support
Enforcement Division until the issues discussed herein are fully adjudicated.

{19}     State courts have jailed Plaintiff before. They tried to jail Plaintiff
again. Lawyers for the state have claimed that it is important to carry out
such enforcement proceedings. This Court should stop the state courts now,
by providing the relief Plaintiff requests.

{20}     We are looking for the justice demanded by the law. If you feel the
temptation to circumvent or misrepresent the law to save the poor ex-partner
(Plaintiff and his ex were never married) and the beautiful children from
what you assume is a deadbeat dad, challenge your stereotypes and
prejudices. Read Plaintiff's Consolidated Brief in Chief for his Appeal to the
New Mexico Court of Appeals filed on 11/10/2020 in case A-1-CA-38571.
Read how his poor ex and children are living in the trailer that Plaintiff paid
for but which was taken from him without compensation. Read how that

meant the Plaintiff lived in his car and was still ordered to pay more. Learn how the New Mexico Courts and the Child Support Enforcement Division (CSED) then tried to take Plaintiff's driver's license so that he would be living under a bridge (see case D-101-CV-202000215). Read about how the CSED, supported by Judge Bulman asked Plaintiff to find friends or relatives to pay his child support order as a type of ransom to keep plaintiff out of jail. Read about how the CSED got away with charging Plaintiff for a year as if he had no child custody when he actually had 50/50 physical custody, and this has not been corrected to date. Or read about how the mother reported only earning $300/month while charging $100/hour for her services to customers, and the court did not order her to make more money. Read how mother was ordered to attend counseling to stop being a domestic abuser while Plaintiff was ordered to take counseling as a domestic violence victim. Read how Mother's abuse led to the recommendation that Plaintiff get LESS time with his children. See how the CSED would send two lawyers to court to work against Plaintiff while leaving a man barely able to speak and read English to defend himself -- Judge Bulman ignored a 40-year-old "precedent" so as to avoid giving Plaintiff legal representation. If you aren't appalled, you didn't read it. Judge Bulman is an example of a New Mexico judge who does not feel compelled to follow any law.

9

{21}      The CSED has quashed all previous enforcement proceedings against

Plaintiff (of course it would – previous enforcement proceedings were so

clearly illegal), but they didn't do that until the federal courts started

reviewing their behavior. None of the New Mexico Courts were going to

stop the CSED. Plaintiff informed the state courts that they were breaking

the law, but that did not lead to change. Plaintiff's colleague filed a report

with the HHS Office of the Inspector General showing that New Mexico

misrepresented its programs to the federal government and refused to follow

federal regulations designed to give due process. Shortly thereafter, the state

of New Mexico reported that it needed to change its child support laws or

lose $147.5 million per year for failure to follow federal regulations. The

state wouldn't follow the law when it was pointed out to them. They had to

be forced.

{22}      Maybe you don't want to read all the future family court cases where

people argue that the courts violate the constitution and federal law, even

though that is your job. If so, the only way to limit such cases is to get the

family courts to stop violating the constitution and federal law. Plaintiff is

well-aware that Younger and Rooker-Feldman abstention will no longer

protect tyrannical judges. Let this be the first case to show it, because we

will keep attacking these courts to force them to be held to constitutional

standards ignoring these issues now will lead to many more difficult cases ahead.

{23}    The law in this case is clear, but suppose it wasn't – suppose we were asking if the "best interests of the child standard' is even facially constitutional since it disregards the rights of the parents. Suppose we asked for equal treatment for men and women absent extremely compelling reason not to give equal treatment. Do you imagine state courts that ignore clear federal and constitutional law unless supervised by federal agencies and federal courts would rule fairly? Plaintiff certainly does not.

{24}    We are asking you to follow the law. This lawsuit may be only a metaphorical shot across the bow of the state courts, but we see the state courts, we know they are the enemy, we will keep shooting, and our aim will get better with experience.

{25}    **Previous Litigation and Administrative Relief**

{26}    The litigation history shows how adamantly the NM courts defied the law in the past, that NM courts will continue to defy the law in the future, and how Plaintiff, in good faith, exhausted his appeals in state courts.

{27}    Plaintiff is a respondent in a child custody and support case that was initiated in the First Judicial District Court of New Mexico (FJDCNM) in

2012 (Langarcia v. Balderama, D-101-DM-2012-00080). Shannon Bulman

is the current judge in said child custody and support case.

{28}    On 12/19/2017, and many times since, Plaintiff informed the

FJDCNM that he is an undocumented immigrant.

{29}    On 9/27/2018 Plaintiff started serving fifteen days in jail, ending on

9/27/2018, in fulfillment of a sentence imposed in a contempt proceeding for

not paying enough child support.

{30}    On 9/27/2019 the FJDCNM again ruled that Plaintiff was in contempt

for failing to follow a child support order. Plaintiff was sentenced to 179

days in jail.

{31}    On 10/28/2019 Plaintiff appealed said 9/27/2019 contempt ruling in

the state court system on several grounds, including arguing that the state

district court erred on said IRCA issue.

{32}    On 11/4/2019 Plaintiff requested a modification of the child support

order. The motion was not mandatory. The request was not made by the state

to sanction the Plaintiff. No investigation of the Plaintiff was made to show

fault on his part. The state did not issue a formal complaint or charges

against the Plaintiff as part of to the child support modification proceedings.

As stated above, Plaintiff intends to do the same thing again, making the

same arguments again, and expects to get the same results from the New

Mexico judiciary and CSED.

{33}     On 3/10/2020 a hearing to set a child support obligation was held

before hearing officer William Casen. Casen gave an oral decision.

{34}     On 3/30/2020 Plaintiff filed a motion to reconsider the illegal child

support order.

{35}     On 4/1/2020 William Casen submitted his written recommendations

to the FJDCNM, finding that Plaintiff was operating in good faith.

{36}     On 4/20/2020 Plaintiff submitted "Objections to Illegal Child Support

Ruling" to the FJDCNM.

{37}     On 4/23/2020 The FJDCNM filed its "Order Resolving Objections to

Child Support Report and Decision", which claimed to accept William

Casen's Report in full, but contradicted Casen's report by finding that

Plaintiff was acting in bad faith.

{38}     On 5/11/2020 Plaintiff again requested that the child support order be

reconsidered in his "Motion to Clarify and Reconsider Illegal Written Child

Support Ruling."

{39}     On 5/13/2020, a new order modifying the child support obligation was

issued, overruling Plaintiff's objections.

{40}   On 5/22/2020, nearly 7 months after filing the notice of appeal for said 9/27/2019 contempt ruling, Plaintiff appealed said modified child support order to the New Mexico Court of Appeals, arguing that the state court had once again erred on the IRCA Controversy and had made a new error, with the new error being a Speech Chill injury.

{41}   On 9/24/2020, nearly a year after the appeal of said 9/27/2019 contempt ruling, the state court of appeals consolidated the appeal of said 9/27/2019 contempt ruling with the appeal of said modified child support order.

{42}   On 11/10/2020 Plaintiff's Consolidated Appeal Brief in Chief was filed in the New Mexico Court of Appeals in case A-1-CA-38571.

{43}   On 9/30/2021, the state Court of Appeals ruled on said consolidated appeal. It vacated and remanded said 9/27/2019 contempt ruling, agreeing that the lower court had erred by not providing Plaintiff with legal representation. The state Court of Appeals affirmed said modified child support order, arguing that the lower court had not erred on the IRCA and Speech Chill Controversies. The ruling from the state court of appeals did not discuss said Speech Chill Controversy in relation to the contempt proceedings, only in relation to the proceedings determining modified child support order;

{44}    On 10/27/2021, Plaintiff filed a federal lawsuit against state court

Judges Bulman (and others) in Federal District Court for the District of New

Mexico challenging the modified child support order, again, on the IRCA

and Speech Chill Controversies, case 1:21-cv-01037-JB-JFR;

{45}    On 11/23/2021 Plaintiff requested certiorari from the state Supreme

Court contesting the IRCA and Speech Chill Controversies;

{46}    On 1/11/2022 the state Supreme Court denied certiorari;

{47}    On 2/4/2022 Plaintiff filed an Amended Complaint in Federal Court

challenging the modified child support order based on the IRCA

Controversy and the Speech Chill Controversy, case 1:21-cv-01037-JB-JFR.

{48}    On 7/28/2022, the Human Services Department, Child Support

Enforcement Division (CSED), sought to withdraw its 2018 and 2019 orders

to show cause based on the Court of Appeals of New Mexico's remand,

explaining that it no longer wished to pursue civil contempt against

Balderama. See Langarcia v. Balderama, No. D-101-DM-2012-00080,

Motion to Withdraw Motion for Order to Show Cause and Quash Amended

Order to Show Cause and Subpoena, filed July 28, 2022.

{49}    On 8/3/2022, The FJDCNM granted the CSED motion to quash its

civil contempt proceedings against Plaintiff [See Langarcia v. Balderama,

15

No. D- 101-DM-2012-00080, Order Withdrawing Motion for Order to Show Cause, Quashing Amended Order to Show Cause and Amended Subpoena].

{50}     On 2/1/2023 Magistrate Judge Robbenhaar concluded that the Court is without jurisdiction to review Balderama's request for declaratory and injunctive relief pursuant to the Younger abstention doctrine… the child support proceedings from which Balderama seeks relief were ongoing at the time he filed his federal action, that they involve civil enforcement proceedings, and that they involve a civil action implicating important state interests."]

{51}     On 2/15/2023 Plaintiff objected to said recommendations.

{52}     On 3/31/2023 the District Court dismissed Plaintiff's complaints without prejudice based on Younger abstention

{53}     On 4/24/23, Plaintiff appealed to the 10th Circuit Court of Appeals [Appellate case 23-2063].

{54}     On 4/25/23 Plaintiff was granted leave to appeal in forma pauperis.

{55}     On 1/16/2024, the 10th Circuit Court affirmed the District Court's dismissal without prejudice [Appellate case 23-2063, Document 010110983910 filed on 01/16/2024].

**{56}     Jurisdiction and Venue**

{57}    The Court has jurisdiction over this case under 28 U.S.C §1331 which

provides for original district court jurisdiction over cases presenting federal

questions.

{58}    The Court also has jurisdiction over this case under 28 U.S.C.

§1343(3).

{59}    Venue is proper in the District of New Mexico because the plaintiff

resides there, and defendants operate there under the color of law, and the

events transpired there.

**{60}    Parties**

**{61}**    Plaintiff, Mr. Javier Balderama, is a citizen of Mexico residing as an

undocumented noncitizen in Santa Fe, New Mexico, United States of

America.

**{62}**    Defendant Shannon Bulman is the Judge for the First District Court of

New Mexico who is presiding over the plaintiff's child support case.

**{63}**    Defendant Betina G. McCracken is the Acting Director for the New

Mexico Human Services Department, Child Support Enforcement Division.

**{64}    Factual Allegations: Background**

**{65}**    The plaintiff has four children.

**{66}**    Two of the plaintiff's children are under the age of 18.

**{67}    Count 1 --- Preemption**

{68}     Plaintiff realleges paragraphs 1-66.

{69}     In the 3/10/2020 hearing to determine the child support order, and in

the child support order itself, Plaintiff was told that he must find work.

{70}     In said child support hearing, Judge Bulman suggested jobs for

Plaintiff.

{71}     In said child support hearing, Judge Bulman questioned Plaintiff about

what sort of work he could do.

{72}     Judge Bulman criticized Plaintiff in written findings for not looking

for work or getting job training.

{73}     The child support order imputes employment income to determine

how much child support to order.

{74}     None of the courts to who have reviewed Judge Bulman's child

support order have reviewed case law in *Arizona*, which is a landmark ruling

related to the IRCA.

{75}     Plaintiff argues that *Arizona* and the arguments in U.S. v. Texas (case

1:24-cv-0008 in the U.S. District Court for the Western District of Texas

Austin Division) has made it very clear that the Immigration Reform and

Control Act implicitly preempts state government activity that is not

explicitly outlawed,

{76}     Since Plaintiff will continue to make the IRCA argument in his future

child support filings, Plaintiff is certain to face this issue in future hearings

to set child support obligations. Since Judge Bulman and her lawyers

contend that they can order undocumented noncitizens to find employment,

and Judge Bulman has, in previous cases, issued an order for an

undocumented noncitizen to find employment, and since no court has yet

said that Judge Bulman cannot order undocumented noncitizens to find

employment, Judge Bulman will likely make future orders requiring Plaintiff

to find employment. If such potential future orders are unconstitutional, they

should not be made. Plaintiff is asking for relief from such future potential

orders.

{77}     According to the U.S. District Court Memorandum Opinion (case

1:21-cv-01037-JB-JFR, page 4): "In determining whether to accept

jurisdiction in a declaratory judgement action, the Court should ask: [1]

whether a declaratory actions would settle the controversy; [2] whether it

would serve a useful purpose in clarifying legal relations at issue; [3]

whether the declaratory remedy is being used merely for the purpose of

"procedural fencing" or "to provide an arena for a race to res judicata"; [4]

whether use of a declaratory action would increase friction between our

federal and state courts and improperly encroach upon state jurisdiction; and

[5] whether there is an alternative remedy which is better or more effective."

{78}     In response to question [1]: A declaratory ruling from the U.S. district

court that it is unconstitutional for New Mexico state court judges to threaten

to use the power of the state to punish undocumented noncitizens for not

finding employment will completely settle this controversy.

{79}     In response to question [2]: A ruling from the U.S. district court that

New Mexico State court judges cannot threaten to use the power of the state

to punish undocumented noncitizens for not finding employment would

serve the useful purpose of clarifying the relationship between federal and

state power, and give a man an unpunishable course of action.

{80}     In response to question [3]: Plaintiff knows of no reason to assert the

requested declaratory relief is merely for procedural fencing – it is Plaintiff's

best effort to assert his defense against a state that will not follow the law

unless forced to do so.

{81}     In response to question [4]: a declaratory ruling that it is

unconstitutional for New Mexico State court judges to threaten to use the

power of the state to punish illegal aliens for not finding employment will

not interfere with current state proceedings, and so should not create conflict

with the state, as long as the state desires to act within federal law.

{82}     In response to question [5]: Because no court in New Mexico has

disallowed threatening to use the power of the state to punish an

unauthorized alien for not finding employment, Plaintiff knows of no better

way to stop this injustice than a declaratory ruling from a federal court.

**{83}     Count 2 --- Speech chill.**

{84}     Plaintiff realleges paragraphs 1-66.

{85}     The child support order from 4/23/2020 stated that Father was

continuing to act in bad faith, while also accepting the recommendations that

Father was acting in good faith.

{86}     Plaintiff asked for clarification about which of his actions

demonstrated bad faith on 5/11/2020 in his "Motion to Clarify and

Reconsider…".  Plaintiff asserted that Judge Bulman appeared to be

threatening Plaintiff with a bad faith ruling if he continued to litigate his

rights. Judge Bulman could potentially have resolved the issue there, but

chose not to. Judge Bulman declined to clarify whether her ruling was a

threat or what actions of Plaintiff proved bad faith in her denial of 5/13/2020

and when she issued her final ruling on 5/13/2020.

{87}     Plaintiff Appealed to the New Mexico Court of Appeals, which

eventually issued its Memorandum Opinion. Said Memorandum Opinion

sua sponte clarified Judge Bulman's ruling about how the plaintiff

demonstrated bad faith. Said Memorandum Opinion claims: "The report adopted by the district court stated, "The Hearing Officer finds that, in good faith, Father is capable of at least half-time employment at the current Santa Fe County minimum wage[.]" The district court clarified at the hearing that it believed Father made a good faith request to modify his child support obligation, which lead to the order decreasing his child support obligation. This does not conflict with the district court's review of Father's objections to the child support order, which concluded that an unauthorized immigrant can be ordered to pay child support, and income can be imputed to Father if he is unemployed in bad faith in order to avoid child support. The district court's finding was that Father's efforts to avoid any child support obligation—in response to the order that he pay a decreased amount of child support—were in bad faith. This finding was basis of the district court's denial of his request to decrease Father's obligation to zero dollars."

{88}    The objections referred to as "Father's objections" in said Memorandum Opinion were from Plaintiff, and included the request for relief: "reduce the child support order and arrears to only what is allowed by state and federal law (probably $0)".

{89}    The only "efforts to avoid any child support obligation" that the Plaintiff (Father) is aware of *"in response to* the order that he pay a

decreased amount of child support" (italics added) were to contest the ruling

and make the request for relief: "reduce the child support order and arrears

to only what is allowed by state and federal law (probably $0)".

{90}     In Plaintiff's Amended Complaint in his previous case (case 1:21-cv-

01037-JB-JFR, document 7, paragraphs 61-63), Plaintiff claimed that Judge

Bulman of the FJDCNM and Judge Hanisee of the New Mexico Court of

Appeals ruled Plaintiff to be operating in bad faith *because* he submitted

objections to the state court ruling, specifically, that he included the *request*

*and opinion*: "reduce the child support order and arears to only what is

allowed by federal and state law (probably $0)." This state court ruling was

a major topic for Plaintiff (case 1:21-cv-01037-JB-JFR, paragraphs 55-63

and 77-93 of document 7). Opposing counsel would be negligent to not

notice these paragraphs. Opposing counsel disputed Plaintiff's claim saying

Judge Bulman can legally hold Plaintiff to be operating in bad faith for

arguing against her, e.g.: "Judge Bulman's Order, however, is a reasoned

explanation of how the sanctions of federal immigration law do not apply to

him, and that his ongoing efforts to use the alleged sanctions as reason for

failing to comply with the existing Court Order are in "bad faith"" (case

1:21-cv-01037-JB-JFR, page 2 of document 27). There can be no serious

question that Plaintiff's "ongoing efforts to use the alleged sanctions as reason" are speech acts -- what non-speech act presents reason to a court?

{91}      What the defendants and their counsel have said about this topic is, perhaps, less persuasive than what they haven't said. Plaintiff asked Judge Bulman whether she was threatening him for litigating his rights (case 1:21-cv-01037-JB-JFR, document 7, paragraphs 56-59). She could have said "no" and explained what she had actually meant by Plaintiff's "continuing efforts", but she did not. The same topic was brought to the NM Court of Appeals (case 1:21-cv-01037-JB-JFR, document 7, paragraphs 61-63, see also the Consolidated Brief in Chief submitted to the NM Court of Appeals, page 15, paragraphs 1-2). The court of Appeals made it even clearer that Plaintiff's request was the cause of the bad faith ruling (document 7, paragraphs 61-63). Lawyers for the defense could have said Plaintiff misunderstood Judge Bulman, but they didn't. They defended the Judges for having done this. No one is disputing that Plaintiff was ruled to be acting in bad faith at least in part for making arguments in court -- specifically for his request that his child support obligation be reduced to $0.

{92}      Therefore, Plaintiff requests as a finding of fact Judge Bulman was motivated, at least in part by Plaintiff's speech, to issue her bad faith ruling.

{93}    The method to evaluate a speech chill injury is explained in the

"Motion for Leave to File Brief Amici Curiae and Brief Amici Curiae of

Nine Law Professors Who Write About Appellate Review in Support of

Petitioner" in the case of Bennie v. Munn, No. 16-453 (2017): "The rule of

law is undisputed: A First Amendment retaliation claim is established if

"government official[s] took adverse action," motivated at least partly by a

speaker's constitutionally protected activity, "that would chill a person of

ordinary firmness from continuing in the activity," Revels V. Vincenz, 382

F.3d 870, 876 (8th Cir. 2004)."

{94}    Opinions about questions of law are protected speech.

{95}    Judge Bulman took an adverse actions (she issued a bad faith ruling

that is the ruling needed to jail a person for contempt) motivated at least

partly by a speaker's constitutionally protected activity (Judge Bulman made

her ruling because Plaintiff argued against her in court documents).

{96}    "Furthermore, all of the circuit courts have agreed on an objective

criterion of a chilling injury as stated by the United States Court of Appeals,

Eleventh Circuit in Bennett et al. v. Hendrix et al., 423 F.3d 1247, No 04-

12256 (2005), citing Garcia, 348 F.3d at 729 (the retaliatory issuance of

parking tickets totaling $35 created a jury issue because the defendant

"engaged the punitive machinery of government in order to punish Ms.

Garcia for her speaking out"); Keenan, 290 F.3d at 259 (one plaintiff stated a retaliation claim that would chill a person of ordinary firmness with allegations that officers stopped his car and detained him for an unreasonable time, "allegedly with their guns drawn during part of the traffic stop, and ultimately issued only a minor traffic citation that was later dismissed"); Bloch v. Ribar,156 F.3d 673, 680-81 (6th Cir.1998) (in response to plaintiff's criticism, sheriff publicly released confidential and humiliating details of plaintiff's rape; such act was sufficiently adverse to chill a person of ordinary firmness); Bart, 677 F.2d at 624-25 ("campaign of petty harassments" against the plaintiff including "[h]olding her up to ridicule for bringing a birthday cake to the office" stated a cause of action for retaliation)."

{97}   No one can doubt that threatening to use the power of the state to jail a man for 179 days is more intimidating than a $35 parking ticket.

{98}   Therefore, Judge Bulman chilled Plaintiff's speech in violations of his First and 14th Amendment rights.

{99}   According to the U.S. District Court Memorandum Opinion (case 1:21-cv-01037-JB-JFR, page 4): "In determining whether to accept jurisdiction in a declaratory judgement action, the Court should ask: [1] whether a declaratory actions would settle the controversy; [2] whether it

would serve a useful purpose in clarifying legal relations at issue; [3]

whether the declaratory remedy is being used merely for the purpose of

"procedural fencing" or "to provide an arena for a race to res judicata"; [4]

whether use of a declaratory action would increase friction between our

federal and state courts and improperly encroach upon state jurisdiction; and

[5] whether there is an alternative remedy which is better or more effective."

{100}    In response to question [1]: A declaratory ruling from the U.S. district

court that Plaintiff's IRCA argument proffered in a court document is

protected speech will undo this speech chill injury.

{101}    In response to question [2]: A declaratory ruling from the U.S. district

court that Plaintiff's IRCA argument proffered in a court document is

protected speech would serve the useful purpose of protecting speech and

due process.

{102}    In response to question [3]: Plaintiff knows of no reason to assert the

requested declaratory relief is merely for procedural fencing – it is Plaintiff's

best effort to assert his defense against a state that will not follow the law.

{103}    In response to question [4]: The FJDCNM and the New Mexico Court

of Appeals have decided to allow threatening to punish Plaintiff for stating

his opinion. The New Mexico Supreme Court has decided not to consider

the issue. No further state proceedings are pending. Therefore, a declaratory

ruling that the Plaintiff's stated opinion is protected speech will not interfere with current state proceedings, and so should not create conflict with the state.

{104}    In response to question [5]: Because no court in New Mexico has disallowed threatening to punish Plaintiff for stating his opinion, Plaintiff knows of no better way to stop this injustice than a declaratory ruling from a federal court.

**{105}    Count 3 --- Enforcement**

{106}    If Ms. McCracken decides to further prosecute Plaintiff for the alleged contempt of failing to follow the Court's current or future illegal child support orders, then she will also be committing an act in violation of the Supremacy Clause.

{107}    Ms. McCracken does not have immunity from injunctive relief. This Court has stated [see footnote on page 34 of Document 39 of case 1:21-cv-01037 files 03/31/23: "Eleventh Amendment immunity also applies to McCracken, who is the Acting Director of the Child Support Enforcement Division, a division of the New Mexico Human Services Department, a New Mexico State Agency, and whom Balderama sues in her official capacity. To the extent that Balderama requests prospective injunctive relief, the doctrine which the Supreme Court announced in Ex parte Young, 209 U.S. 123

(1908), overrides the State's Eleventh Amendment immunity, and permits the court to hear Balderama's claims".

{108}     Plaintiff is asking for prospective injunctive relief from Ms. McCracken.

**{109}     THEREFORE, the plaintiff requests that this Court:**

**{110}**     Declare that it is a violation of the Supremacy Clause and the Immigration Reform and Control Act for a state government representative acting under the color of law to order illegal aliens to find employment or to threaten to use state power to punish an illegal alien for failing to find employment, or for failure to obtain money from employment.

**{111}**     Declare that it is a First Amendment violation of free speech and a 14th Amendment violation of Due Process  to rule that a person is operating in bad faith for stating his opinion on a question of law for the purpose of defending himself in a court of law.

**{112}**     Declare that it is a First Amendment violation of free speech and a 14th Amendment violation of Due Process to rule that a person is operating in bad faith for stating the opinion that the IRCA prohibits state courts ordering undocumented immigrants to find employment.

{113}     Preliminarily and permanently enjoin Ms McCracken and the Child Support Enforcement Division of New Mexico – as well as their successors,

officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with those individuals – from further prosecuting Plaintiff for failing to follow child support orders that require him to find employment.

**{114}** Grant any additional relief this Court deems just and proper.

**{115}** Submitted respectfully,


**{116}** Javier Balderama, pro se plaintiff

2769 Walnut St

Santa Fe N M 87507

(505) 316-2968

Date: 1/26/24

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the plaintiff in

the above action, that he has read the above complaint and that the

information contained therein is true and correct. 28 U.S.C. Sec. 1746.  18

U.S.C. Sec 1621.


Executed at _____ on 1 / 26  20 24

Signature _Vaulir Baldewamer_____

31